## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

GUY HOKANSON,                          )
                                       )
                    Plaintiff,         )
                                       )     **CIVIL ACTION**
v.                                     )
                                       )     **No. 10-1403-JWL**
                                       )
MICHAEL J. ASTRUE,                     )
Commissioner of Social Security,       )
                                       )
                    Defendant.         )
_____ )


## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security

(hereinafter Commissioner) denying disability insurance benefits (DIB) under sections

216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the

Act). Finding no error, the court ORDERS that judgment shall be entered pursuant to the

fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

## I.     Background

Plaintiff applied for DIB on August 26, 2004, alleging disability beginning May

15, 2000. (R. 28, 62, 370-74). The application was denied, and in due course Plaintiff

sought judicial review of the Commissioner's denial in the United States District Court

for the Northern District of Indiana. Hokanson v. Comm'r of Social Sec. Cause No. 3:08-

CV-252 CAN, 2009 WL 1098706 (N.D. Ind. April 23, 2009).[1]  That court found that the

Administrative Law Judge (ALJ) erred in weighing the medical opinions, and as a result

of that error, substantial evidence did not support either:  (1) the decision to afford greater

weight to the state agency physicians than to the treating physicians, or (2) the credibility

determination.  (R. 342).  The court also found error in the hypothetical questioning of the

vocational expert which left the ALJ's step four determination without evidentiary

support.  Id.  Consequently, the case was remanded for further proceedings.  Id.

On remand, Plaintiff submitted medical records relating to office visits with

another physician, Dr. Hawkins, in 2008 and 2009 (R. 378-91), and another hearing was

held on September 23, 2009 before ALJ Steven J. Neary.  (R. 392-413).  Plaintiff

appeared with counsel at the hearing, and testimony was taken from Plaintiff, from a

long-time friend of Plaintiff, and from a vocational expert.  Id.

ALJ Neary issued his decision after remand on April 5, 2009 in which he

determined that Plaintiff met the insured status requirements only through December 31,

2006 (date last insured) and did not engage in substantial gainful activity between his

alleged onset date and his date last insured.  (R. 318).  He found that Plaintiff had a

combination of impairments which is severe, including osteoarthritis of the shoulders

status post bilateral arthroplasty surgeries; osteoarthritis of the knees; chronic back pain

with mild degenerative changes and mild spondylosis of the cervical, thoracic, and

---

[1]A copy of that court's remand Order is included in the administrative record in
this case (R. 329-42), and all further citation will be to the administrative record.

lumbar spine; obesity; headaches; and fibromyalgia, but that Plaintiff's condition did not meet or medically equal the severity of any Listed impairment(s). (R. 318-21). The ALJ determined Plaintiff had the residual functional capacity (RFC) for a range of light work with certain postural limitations and with an inability to perform repetitive pushing and pulling, overhead lifting, or overhead reaching. Id. at 321. He determined that through his date last insured Plaintiff was able to perform past relevant work both as an assistant manager in retail food and as a security guard as those jobs are generally performed, and he determined, alternatively, that through the date last insured there were a significant number of jobs in the national economy that Plaintiff could have performed. Id. at 325, 326. Consequently, he found that Plaintiff was not disabled within the meaning of the Act at any time before the date last insured, and he denied the application. Id. at 327.

Plaintiff disagreed with the ALJ's decision, and asked the Appeals Council to review it. (R. 309-11). The Appeals Council considered Plaintiff's arguments, but found no reason to assume jurisdiction over the decision after remand. (R. 305-08). Therefore, the ALJ's decision is the final decision of the Commissioner after remand. (R. 306); 20 C.F.R. § 404.984. Plaintiff now seeks judicial review of that decision. (Doc. 1).

## II.    Legal Standard

The court's jurisdiction and review are guided by the Act. Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C.

3

§ 405(g)).  Section 405(g) of the Act provides for review of a final decision of the Commissioner made after a hearing in which the Plaintiff was a party.  It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion.  Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in any substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months.  Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993)

4

(citing 42 U.S.C. § 423(d)); see also, Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir.

1985) (quoting identical definitions of a disabled individual from both 42 U.S.C.

§§ 423(d)(1) and 1382c(a)(3)(A));  accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C.

§§ 423(d)(1)(A), 1382c(a)(3)(A)).  The claimant's impairments must be of such severity

that he is not only unable to perform his past relevant work, but cannot, considering his

age, education, and work experience, engage in any other substantial gainful work

existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step sequential process to evaluate disability.  20

C.F.R. § 404.1520 (2010); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing

Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be

made at any of the steps that a claimant is or is not disabled, evaluation under a

subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at

1084).  In the first three steps, the Commissioner determines whether claimant has

engaged in substantial gainful activity since the alleged onset, whether he has a severe

impairment, and whether the severity of his impairment(s) meets or equals the severity of

any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).

Williams, 844 F.2d at 750-51.  If claimant's impairment(s) does not meet or equal a listed

impairment, the Commissioner assesses claimant's residual functional capacity

(hereinafter RFC).  20 C.F.R. § 404.1520(e).  This assessment is used at both step four

and step five of the sequential evaluation process.  Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five--whether claimant can perform his past relevant work, and whether, when considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show jobs existing in the economy which are within Plaintiff's capability.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ did not properly consider the effects of Plaintiff's obesity, did not base his RFC assessment on substantial record evidence, and failed to perform a proper credibility analysis.  The Commissioner argues that the ALJ properly considered obesity and made a proper credibility finding, and that the RFC assessment was based upon a proper consideration of all of the record evidence.  Because a proper RFC assessment can be made only after the ALJ considers the effects of all of Plaintiff's impairments in combination and performs a proper credibility analysis, the court will consider Plaintiff's claims of error with regard to obesity and credibility before evaluating the ALJ's RFC assessment.  In other words, the court will proceed with its review in the order of the sequential evaluation process.

## III.    Consideration of Obesity

6

Plaintiff claims the ALJ based his functional limitations on the opinion of the state agency physicians, and argues that this procedure produced error because the state agency physicians did not identify obesity as one of Plaintiff's impairments and made no mention of obesity in their RFC assessment.  (Pl. Br. 10-11).  He argues that although the ALJ recognized obesity as a severe impairment, he erred because he did not indicate in the decision how obesity influenced his assessment of functional limitations, and "it appears that the ALJ's RFC assessment was based on [prohibited] 'assumptions about the severity or functional effect of Hokanson's obesity combined with his other impairments.'"  Id. at 11. (quoting Soc. Sec. Ruling (SSR) 02-1p, 2000 WL 628049 at *6;[2] and citing Dewitt v. Astrue, 381 Fed. Appx. 782, 785 (10th Cir. 2010); Hamby v. Astrue, 260 Fed. Appx. 108, 112 (10th Cir. 2008)) (brackets in Plaintiff's brief omitted).

The Commissioner argues that Plaintiff did not include obesity as an impairment when he filed his claim, and did not testify regarding problems or limitations resulting from obesity.  (Comm'r Br. 6).  He points out that only one medical source mentioned that Plaintiff is obese, and that Plaintiff does not argue before this court regarding specific functional limitations which are allegedly caused by his obesity.  Id. at 6-7.  The Commissioner cites SSR 02-1p for the proposition that each case must be evaluated on

---

[2]Although "2000 WL 628049" appears to be an anomalous citation because it predates SSR 02-1p which was promulgated in 2002, the 2000 Westlaw citation nonetheless retrieves SSR 02-1p.  2000 WL 628049 at *1.  SSR 02-1p may also be retrieved by utilizing the citation "2002 WL 34686281."  Both citations are identical, and the pinpoint citations used in this opinion may be used with either citation to retrieve the applicable authority.

information in that case record, and that the ALJ may not speculate or make assumptions about the impact of obesity on the other impairments which a claimant experiences.  Id. at 7 (citing 2000 WL 628049 at *6; and quoting Fagan v. Astrue, 231 Fed. Appx. 835, 837-38 (10th Cir. 2007)).

As Plaintiff's brief implies, obesity is an impairment which may be disabling by itself, or may combine with other impairments to produce a disabling condition.  SSR 02-1p, 2000 WL 628049 at *4.  The Commissioner has recognized that even though obesity might in some instances be disabling when considered by itself "[the Social Security Administration (SSA)] will also consider the possibility of coexisting or related conditions, especially as the level of obesity increases."  Id.  In the Listing of Impairments, the Commissioner has provided specific explanations that the effects of obesity may combine with the effects of disorders of the musculoskeletal system, of the respiratory system, and of the cardiovascular system in particular, and requires that in evaluating claims of disability at all steps of the sequential evaluation process, "including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity."  20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 1.00Q, 3.00I; see also 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 4.00I(1) ("We must consider any additional and cumulative effects of obesity when we determine whether you have a severe cardiovascular impairment or a listing-level cardiovascular impairment . . . and when we assess your residual functional capacity.").  In SSR 02-1p, the Commissioner explained that "obesity in combination with another impairment may or

may not increase the severity of the functional limitations of the other impairment," and

that the SSA will not make assumptions about the resulting severity or functional effects,

but "will evaluate each case based on the information in the case record."  2000 WL

628049 at *6.  The Commissioner explained that functional limitations resulting from

obesity must be considered in assessing RFC, and concluded that "[a]s with any other

impairment, we will explain how we reached our conclusions on whether obesity caused

any physical or mental limitations."  Id. at *6-7.

As Plaintiff argues, the ALJ accorded "significant weight" to the opinion of the

state agency physicians.  (R. 325).   However, that fact does not require a finding that the

ALJ did not sufficiently consider Plaintiff's obesity.  First, Plaintiff has not shown that

the state agency physicians "failed to identify obesity" as one of Plaintiff's impairments.

(Pl. Br. 11).  To be sure, the state agency physicians did not mention "obesity" in their

RFC assessment, and did not specifically state that any of the functional limitations they

suggested were caused by obesity.  However, as the Commissioner points out, the

medical evidence demonstrates that only one medical source (the consultant examiner,

Dr. Sices) mentioned that Plaintiff was "mildly to moderately obese."  (R. 198).  And, as

the ALJ noted, the state agency physicians' opinion was based, at least in part, upon Dr.

Sices's consultative examination.  (R. 325); see also, (R. 217) ("At CE [(consultative

examination)] gait and station were normal . . .").  (R. 217).  Although there were two

reports regarding consultative examinations in the record before the state agency

physicians, Dr. Sices's report is the only one relating to Plaintiff's physical condition, and

is the only report containing the physical results discussed by the state agency physicians. (R. 198-200).  Thus, it is clear that the functional limitations opined by the state agency physicians accounted for Dr. Sices's examination which included a finding that Plaintiff was mildly to moderately obese.

Second, even if the court were to assume that the state agency physicians did not account for obesity as one of Plaintiff's impairments, that shortcoming need not be imputed to the ALJ.  The ALJ specifically identified obesity as one of Plaintiff's severe combination of impairments.  (R. 318-19).  The ALJ stated in his step three evaluation that he had "considered the effect of the claimant's . . . obesity in accordance with the applicable Social Security Rulings."  (R. 321).  The ALJ summarized Dr. Sices's report of his examination (R. 323-24) and discussed the opinions contained in the report.  (R. 324-25).  He then explained the weight he had accorded to the state agency physicians' opinion, noted that the opinion was based upon Dr. Sices's medical examination, and concluded by explaining how he reached his RFC assessment and how he accounted for obesity in that assessment:

> In determining the claimant's physical residual functional capacity, the Administrative Law Judge has given significant weight to the opinion of the State agency physicians which is the only opinion on the issue of the claimant's ability to complete work-related activities during the relevant period.  The State agency physicians' opinion is based upon Dr. Sices' examination findings and the medical evidence, including objective imagining[3] [sic] findings.  The Administrative Law Judge believes <u>limiting</u>

---

[3]The court finds that the ALJ intended to state "imaging findings."  In the RFC prepared by the state agency physicians, there are handwritten notes referring to MRI

10

the claimant to the light exertional level with postural limitations takes into account the symptoms caused by the claimant's reported impairments, which are supported by the medical and other evidence including the claimant's obesity.

The Administrative Law Judge notes that the claimant was reported to have done well after his left shoulder arthroplasty and that the medical evidence indicates he was making a good recovery after his right shoulder arthroplasty.  However, to further take into account the claimant's subjective complaints of pain in his shoulders, the Administrative Law Judge has added additional limitations of no overhead reaching or lifting and no repetitive pushing or pulling.

Based on a review of the evidence, including the testimony at the hearing, the Administrative Law Judge is persuaded that the residual functional capacity determined in this Finding adequately takes into account all of the symptoms caused by the claimant's impairments which are supported by the medical and other evidence, including his obesity and his allegations of pain.

(R. 325) (emphases added to highlight findings and explanations regarding obesity).

Plaintiff's argument, that the ALJ did not indicate how obesity influenced his RFC assessment and that his assessment was merely based upon assumptions about the severity or functional effect of obesity ignores the ALJ's explanation as quoted above, ignores the ALJ's assertion that he made his assessment based upon consideration of obesity, and ignores the principle expressed in SSR 02-1p that a lower level of obesity requires less explanation of how it was addressed in the ALJ's analysis.  SSR 02-1p, 2000 WL 628049 at *4 (SSA will consider coexisting or related conditions, "especially as the level of obesity increases").

---

results, left total shoulder arthroplasty, and CT of the lumbar spine.  (R. 218).

As the Commissioner argues, in the "Disability Report" completed at the time Plaintiff filed his claim for disability, he did not include obesity as a condition that limits his ability to work. (R. 87-88). Moreover, the court's review of the hearing transcripts reveals that Plaintiff, who was represented by counsel at both hearings, did not testify at either hearing regarding any limitations resulting from obesity. (R. 283-304, 392-413). At the first hearing Plaintiff testified in response to the ALJ that he weighed 218 pounds (R. 286), and when his own counsel questioned him, counsel elicited that Plaintiff had gained about 60 to 65 pounds since he quit working (R. 292), but at no time did Plaintiff suggest that his weight caused <u>any</u> limitations in function. At the first hearing Plaintiff's wife testified that she was a registered nurse, and that she had nothing to add to her husband's testimony because, "[y]ou pretty much covered everything." (R. 297). At the second hearing, Plaintiff again provided no testimony regarding limitations resulting from obesity. Also at the second hearing, a friend testified that he had known Plaintiff for twenty-four years, but he did not testify regarding any limitations attributed to obesity. (402-05). Further, as the Commissioner notes, Dr. Sices is the only medical source who suggested that Plaintiff is obese, but he did not include obesity in the "Impression" section of his report. (R. 198-99). In these circumstances, Plaintiff's level of obesity is low, and there is virtually no record evidence of limitation resulting from obesity. Nonetheless, the ALJ stated he had considered the impact of obesity, and explained how he had accounted for obesity in assessing Plaintiff's RFC. The court finds no error in the ALJ's consideration of obesity.

The cases cited by Plaintiff do not require a different result, as they are easily distinguished from this case.  In <u>Hamby</u>, 260 Fed. Appx. at 109, the plaintiff alleged disability due to obesity at the time of her application.  Here, Plaintiff never alleged before the Commissioner that obesity caused disabling limitations.  The <u>Hamby</u> court noted that the medical records reflected that Hamby is obese.  <u>Id.</u> at 110.  Here, only Dr. Sices noted that Plaintiff is obese, and even he did not include obesity in his "Impression" summary.  Moreover, the court in <u>Hamby</u> noted that the ALJ failed to adequately consider obesity in combination with other impairments.  <u>Id.</u> at 112.  Whereas, here the ALJ stated he had accounted for the effects of obesity and Plaintiff does not point to any functional limitations in this case resulting from obesity and which were overlooked by the ALJ.

The case of <u>DeWitt</u>, 381 Fed. Appx. 782, is to a similar effect.  Although DeWitt did not allege obesity at the time of her application, she included obesity when she requested an ALJ hearing.  <u>Id.</u> at 783.  Here, Plaintiff <u>never</u> alleged before the Commissioner that obesity caused disabling limitations.  DeWitt testified that she is 5' 8" tall and weighs 280 pounds, <u>id.</u> at 784, whereas Plaintiff here is 5 feet, 8 and ½ inches tall, but weighs only 218 pounds.  (R. 285-86).  In <u>Dewitt</u>, the testifying medical expert, Dr. Brahms, did not offer an opinion about the functional effects of obesity.  Dr. Brahms didn't even mention obesity, and downplayed the need to sit which had been suggested by another doctor, because "[plaintiff] doesn't sit on her hands and her shoulders."  <u>DeWitt</u>, 381 Fed. Appx at 785.  The <u>DeWitt</u> court found that "[g]iven Dr. Brahms' failure to mention DeWitt's obesity and his quick dismissal of conflicting medical opinions, we fail

13

to see how the ALJ's reliance on his testimony could satisfy the duty to consider the effects of DeWitt's obesity on her other severe impairments." Id. Here, the ALJ did not rely on the opinions of the state agency physicians to satisfy his duty to consider the effects of obesity, but as discussed above, he specifically considered obesity himself.

**IV.     Credibility Determination**

Plaintiff's credibility argument is almost non-existent.  He briefly summarizes the legal standard applicable to credibility determination in the Tenth Circuit; notes that the ALJ found Plaintiff's allegations "not credible to the extent they are inconsistent with the above residual functional capacity assessment [made by the ALJ];" asserts that the ALJ failed "to explain or support which parts of Hokanson's testimony he did not believe, and why;" and argues that the credibility determination should be overturned because it "is not supported by substantial evidence."  (Pl. Br. 15-16) (quoting (R. 322); and citing Waymire v. Apfel, 106 F. Supp. 2d 1208 (D. Kan. 2000)).  The Commissioner argues that the ALJ did not find "parts" of Plaintiff's allegations incredible, but that he found the allegations were not as intense, persistent, or limiting as alleged by Plaintiff.  (Comm'r Br. 8).  He points to record evidence tending to support the ALJ's credibility determination, and argues that the ALJ properly considered Plaintiff's credibility. (Comm'r Br. 8-11).

The Tenth Circuit has explained the analysis for considering subjective testimony regarding symptoms:

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability.  Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain.  This court has stated:  The framework for the proper analysis of Claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987).  We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

Thompson, 987 F.2d at 1488 (dealing specifically with pain) (citations and quotation

omitted).

In evaluating symptoms, the court has recognized a non-exhaustive list of factors

which should be considered.  Luna, 834 F.2d at 165-66; see also 20 C.F.R.

§ 404.1529(c)(3).  These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at

1489.  The Commissioner has promulgated regulations suggesting relevant factors to be

considered in evaluating credibility which overlap and expand upon the factors stated by

the court:  Daily activities; location, duration, frequency, and intensity of symptoms;

factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side

effects of medications taken to relieve symptoms; treatment for symptoms; measures

15

plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms.  20 C.F.R. § 404.1529(c)(3)(i-vii).

An ALJ's credibility determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983).  "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.  Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility.  Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson, 987 F.2d at 1490 ("deference is not an absolute rule").  "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

The ALJ applied the Luna framework, found that Plaintiff has impairments which could be expected to produce the symptoms alleged, and consequently considered all of the record evidence, but concluded that Plaintiff's allegations regarding the intensity, persistence, and limiting effect of the alleged symptoms are not credible.  (R. 322).  In his discussion of the evidence, the ALJ noted the following facts which are relevant to his credibility determination.  Dr. Graham explained that he did not prescribe additional narcotic pain medication, but recommended increasing Plaintiff's dosage of Elavil or

16

prescribing Neurontin, but that Plaintiff was not interested.  (R. 323) (citing Ex. 6F (R.

194)).  Plaintiff's treating pain specialist, Dr. Beatty, declined to provide a disability

referral letter when Plaintiff requested it in September 2004.  Id. (citing Ex. 4F/15 (R.

170)).  Plaintiff's primary care physician declined to comment on his functional

limitations because she did not manage his chronic pain and related problems.  Id. (citing

Ex. 7F (R. 197)).  The ALJ noted that on his consultative examination report, Dr. Sices

reported his impression of exaggerated pain, and reported that Plaintiff's "joints appeared

to improve a little when he was distracted."  Id. (citing Ex. 85 (R. 199)).  Moreover, in

order "to take into account [Plaintiff's] subjective complaints of pain in his shoulders, the

[ALJ] has added additional limitations of no overhead reaching or lifting and no repetitive

pushing or pulling."  (R. 325).

    Additionally, the ALJ specifically incorporated by reference his discussion of the

medical evidence from his first decision.  (R. 322) ("The discussion of the medical

evidence in the prior decision of September 19, 2007, is incorporated by reference except

as modified herein, but not the inferences, the findings or the conclusions based

thereon.").  In that decision, the ALJ noted that x-rays of the knees and hips showed only

mild degenerative changes, that the orthopaedist did not recommend surgical intervention

with regard to the knees and hips, and that MRIs of the spine showed only minimal

findings.  (R. 33) (citing Exs. 2F, 4F, 5F (R. 147-50, 160, 183).

    Although the ALJ's credibility analysis might have been made more explicit and

clear, and although he might have included the entire discussion in his decision after

17

remand rather than incorporating the discussion from the first decision, the court cannot

find that the analysis is inadequate.  The ALJ provided a credibility analysis, and he

closely and affirmatively linked it to substantial evidence as required by the courts.  More

is not required.  Plaintiff does not point to evidence which was not considered, and does

not explain how in his view the analysis is not supported by substantial evidence.  In his

Reply Brief, Plaintiff asserts that the ALJ ignored evidence supporting Plaintiff's

allegations of pain, and improperly evaluated difficulties in Plaintiff's activities of daily

living (Reply 4), but once again he fails to point to evidence which was ignored or to

difficulties which were improperly evaluated.  The court's review finds no such errors.

The court finds no error in the credibility determination.

## V.    RFC Assessment

Plaintiff claims that the ALJ's RFC assessment is deficient because the ALJ

"simply listed the evidence contained in the record, and then announc[ed] his RFC."  (Pl.

Br. 13).  He argues that although the ALJ accorded "significant weight" to the opinion of

the state agency physicians, that opinion is insufficient support for the RFC assessed

because it does not constitute substantial evidence and does not account for all of

Plaintiff's impairments.  (Pl. Br. 13-14).  He argues that the ALJ should have found that

there is insufficient evidence to assess RFC and should have recontacted Plaintiff's

physicians to secure additional records, and if necessary should have ordered a

consultative examination.  Id. at 14-15.  The Commissioner argues that the ALJ properly

assessed RFC in the circumstances of this case.  Specifically, he argues that Plaintiff

18

acknowledges that none of his treating physicians placed functional limitations on Plaintiff, that the ALJ discussed the record evidence, and that the ALJ accorded significant weight to the opinion of the state agency physicians.  (Comm'r Br. 12).  He argues that Plaintiff does not point to specific findings in the RFC assessment which are erroneous, and that in the circumstances the ALJ's assessment is sufficient.  Id. at 12-13.  The court agrees with the Commissioner.

Contrary to Plaintiff's assertion that the ALJ "simply listed the evidence contained in the record, and then announc[ed] his RFC," the ALJ in fact provided an explanation as to how he reached his RFC assessment based upon the record evidence.  As Plaintiff suggests, the ALJ summarized the record evidence including Plaintiff's allegations, the medical evidence, and the medical reports and opinions.  (R. 322-25).  Moreover, the ALJ incorporated by reference the discussion of the medical evidence from his first decision. (R. 322); (R. 33-34).  Further, after discussing the record evidence the ALJ explained the weight he had accorded to the state agency physicians' opinion, noted that the opinion was based upon Dr. Sices's medical examination, and concluded by explaining how he reached his RFC assessment.  (R. 324-25).  This is not error.  Above, in discussing Plaintiff's arguments regarding obesity, the court quoted the ALJ's explanation how he reached his RFC assessment, and it will not repeat that quotation here.  See 11, supra.

Plaintiff next argues that the opinion of the state agency physicians is insufficient to support the RFC assessed by the ALJ because the opinion does not constitute substantial evidence and it did not account for all of Plaintiff's impairments.  (Pl. Br. 13-

14) (citing <u>Frey v. Bowen</u>, 816 F.2d 508, 515 (10th Cir. 1987)).  Plaintiff's reliance upon

<u>Frey</u> is misplaced in the circumstances of this case.

In <u>Frey</u>, four physicians provided opinions regarding plaintiff's medical condition:

Dr. Warden, a board-certified family practitioner who was plaintiff's treating physician;

Dr. Johns, a chiropractor, who treated plaintiff for over fourteen years; Dr. Christiansen,

who performed a consultative examination for the Social Security Administration; and

Dr. Gabbert, who performed a second consultative examination for the agency.  <u>Frey</u>, 816

F.2d at 513-14.  Dr. Warden testified at length in two administrative hearings based upon

his examinations and upon reports of other treating physicians that plaintiff could not

make mechanical use of his right hand and could not sit longer than fifteen minutes, and

that plaintiff could not take anti-inflammatory or anti-arthritic medications.  <u>Id.</u>, 816 F.2d

at 514.  He concluded "that Frey's condition was progressive and degenerative, and that

Frey was totally disabled."   <u>Id.</u>  Dr. Johns produced a report indicating that plaintiff had

progressive degenerative changes and spurring in his spine that would produce increased

pain and that plaintiff could not take anti-inflammatory and painkilling drugs.  <u>Id.</u>  Dr.

Christiansen reported that plaintiff had significant disease in his right knee, that he "did

not find 'much in the way of objective findings' reflecting Frey's back pain, but

concluded that '[o]bjective findings in low back pain are difficult to obtain in view of

legitimate impairment.'" <u>Id.</u> (quoting the administrative record).  Dr. Gabbert found

plaintiff's back range of motion limited by about twenty-five percent, and "reported his

'impression that patient is over-reacting considerably to the straight leg raising' and felt

20

that 'the amount of discomfort [Frey] was having with straight leg raising has been exaggerated considerably.'" Id. (quoting the administrative record).

The ALJ rejected Dr. Warden's testimony and Dr. Johns's reports in favor of Dr. Gabbert's report, stating that Dr. Gabbert had no interest in the outcome whereas "[t]he family doctor naturally advocates his patient's cause." Id., 816 F.2d at 513.  The court found insufficient basis to discount the treating physicians' opinions, noting:  (1) "the fact that certain selected tests were not performed is insufficient reason to disregard the findings of those treating physicians; (2) "findings of a nontreating physician based on limited contact and examination are of suspect reliability," and Dr. Gabbert's report "consists solely of boxes checked on the [Commissioner's] form to indicate his conclusion of no limitation on right arm use.  Such evaluation forms, standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence;" and (3) the assertion that a doctor naturally advocates for his patient is conclusory, and contradicts the established legal rule.  Frey, 816 F.2d at 514-15.  The court concluded "that the ALJ erred in rejecting the treating physicians' testimony and reports.  In the context of the treating physicians' evidence, the consultant physician's report does not constitute substantial evidence to support the ALJ's finding that Frey retained the capacity to perform a full range of sedentary work." Id. at 515.

Here, the context is different than in Frey.  As the ALJ found, "there are no opinions [in this record] by treating sources concerning the claimant's ability to perform work-related activities." (R. 324).  The only medical opinions relevant to Plaintiff's

physical RFC are the state agency physicians' opinion, and Dr. Sices's report.  The ALJ

discussed both the physicians' opinion and Dr. Sices's report, and noted, "The State

agency physicians' opinion is based upon Dr. Sices' examination findings and the

medical evidence including objective imag[]ing findings."  (R. 325).  Although much of

the state agency physicians' opinion is in a check-box form, it is not contradicted by any

other physician's opinion or report.  In Frey, Dr. Warden's and Dr. Johns's opinions were

in direct conflict with Dr. Gabbert's opinion.  Moreover, Dr. Christiansen's opinion did

not contradict the treating medical source opinions,[4] and might even be viewed as

supporting them and as detracting from that of Dr. Gabbert.  Plaintiff acknowledges that

the state agency physicians' opinion included a short discussion of Dr. Sices's

consultative examination, but argues that it cannot constitute substantial evidence

pursuant to Frey because it does not include a "thorough explanation."  (Pl. Br. 13).  As

the Commissioner points out, the Tenth Circuit held in Wall, that where "the "ALJ does

not need to reject or weigh evidence unfavorably in order to determine a claimant's

[residual functional capacity], the need for express analysis is weakened.'"  Wall, 561

F.3d at 1069 (quoting Howard v. Barnhart, 379 F.3d 945, 947 (10th Cir. 2004)) (brackets

in Wall).  Although the Wall court applied the principle to an ALJ's analysis, this court

sees no reason why it should not also apply to the analysis of state agency physicians

---

[4]The court is aware that Dr. Johns, as a chiropractor, is not an "acceptable medical
source," and therefore cannot be a "treating source."  However, he is an "other medical
source" who treated Mr. Frey for more than fourteen years.

when they are assessing RFC.  The record simply contains no evidence contrary to the findings of the state agency physicians, and there is no need for extensive express analysis.  Here, the state agency physicians' opinion, in conjunction with Dr. Sices's report upon which it is partially based and which is mutually supportive of it, is substantial evidence supporting the ALJ's RFC assessment.

Apparently realizing that the state agency physicians' opinion is, in fact, evidence supporting the ALJ's RFC assessment, Plaintiff argues that the ALJ may not rely upon the opinion because the state agency physicians only evaluated Plaintiff's fibromyalgia and arthritis and did not consider all of the impairments which the ALJ considered to be severe in combination.  (Pl. Br. 13-14).  The court does not agree with Plaintiff's understanding of the state agency physicians' RFC opinion.  Plaintiff bases his argument upon the report's statement of a primary diagnosis of "Fibro/Arthritis."  (Pl. Br. 13) (quoting (R. 216)).  He then assumes that the physicians did not consider chronic back pain with mild degenerative changes and mild spondylosis of the cervical, thoracic, and lumbar spine; obesity; and headaches.  (Pl. Br. 13).  There is simply no evidence to support this assumption.  The "primary diagnosis" section of the state agency physicians' RFC form does not indicate or imply that the physicians did not consider all of Plaintiff's impairments.  Rather, the form contains specific instructions which require the physician when assessing limitations to "[b]ase your conclusions on **all evidence** in file (clinical and laboratory findings; symptoms; observations; lay evidence; reports of daily activities; etc.)" (R. 216) (bold in original).

23

Plaintiff points to nothing in the state agency physicians' RFC form or in the record which indicates that the physicians did not follow the instructions they were given, and the court sees nothing to suggest that they did other than as instructed.  All of the record medical evidence was before the state agency physicians when they made their assessment, except for Dr. Bankoff's treatment notes and hospital notes regarding Plaintiff's right shoulder arthroplasty in 2005, and Dr. Hawkins's notes from 2008 and 2009.  With regard to Dr. Hawkins's notes, the ALJ ignored them because they pertain "to a period almost two years after the date last insured," and Plaintiff does not object to the ALJ's determination.  (R. 323).  As for the right shoulder arthroplasty, the ALJ assessed "additional limitations [beyond those assessed by the state agency physicians] of no overhead reaching or lifting and no repetitive pushing or pulling" to account for the bilateral arthroplasties.  (R. 325).

Finally, Plaintiff asserts that "[n]o doctor has defined Hokanson's capability for lifting, walking, standing, or sitting, nor did any source discuss his ability to climb, crouch, crawl, reach, or push and pull," and argues that, therefore, the ALJ should have recontacted Plaintiff's physicians, or at least should have ordered a consultative examination.  (Pl. Br. 14-15).  Because Plaintiff did not justify ignoring the state agency physicians' RFC opinion, Plaintiff's argument is without an evidentiary basis, and therefore fails.  The state agency physicians specifically defined Plaintiff's capability in each of the areas suggested by Plaintiff, and as the court found above, their opinion constitutes substantial evidence in the record supporting the ALJ's RFC assessment.

24

Plaintiff has shown no ambiguity or inadequacy in the record evidence which would require either recontacting Plaintiff's physicians or securing another consultative examination.  Plaintiff has shown no error in the decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision after remand.

Dated this 9th  day of November 2011, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**

25